# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Thong T.,

        Plaintiff,

v.

Andrew Saul, Commissioner of Social Security,

        Defendant.

Case No. 0:20-cv-763 (KMM)

**ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment. [ECF Nos. 20, 22]. The Court held a hearing on April 7, 2021, at which counsel for Plaintiff Thong T. and Defendant Commissioner Andrew Saul presented oral argument. The Court issued a ruling from the bench denying Ms. T.'s motion for summary judgment and granting the Commissioner's. [Minutes, ECF No. 27]. The Court fully stated its reasoning for the decision on the record at the hearing, and that reasoning is incorporated into this Order and briefly summarized below.

**I.    BACKGROUND**

In 2016, Ms. T. applied for disability insurance benefits under Title II of the Social Security Act, claiming that she was disabled due to, inter alia, neck and back injuries, starting in 2014. [Tr. of Admin. Record ("R.") 158–61, ECF No. 19]. Ms. T.'s claim was

1

denied initially and on reconsideration. Upon Ms. T.'s request, a hearing was held in February of 2017, at which a vocational expert testified. [R. 23–33].

The record established that, before applying for disability benefits, Ms. T. had past relevant work as a solderer of circuit boards. [R. 57–58]. At the hearing, the vocational expert testified that this job required Ms. T. to spend all working hours looking into a microscope to manipulate and assemble "very tiny," delicate parts. [R. 58]. The vocational expert further testified that Ms. T.'s past relevant work "is done directly in front of and below the person, so their neck would be tilted in a, kind of, unorthodox matter no matter what," and that it would "be difficult to do it without constantly extending the neck." [R. 58].

Upon conclusion of the hearing, ALJ Erin Schmidt found that Ms. T. had the residual functioning capacity (RFC) to perform light work subject to the following limitations: "occasional overhead reaching bilaterally and frequent reaching in all other directions; no climbing ladders, ropes, or scaffolds; no exposure to potential hazards such as moving machinery or unprotected rights." [R. 19]. The ALJ based this RFC on the record, which included Ms. T.'s medical records, MRI scans, and the opinions of reviewing Agency doctors Shayne Small and Paul Ossmann. The ALJ noted that, in various reports and examinations, Ms. T. has reported daily activities which include cooking, cleaning, laundry, taking out trash, dish washing, doing yard work, driving, shopping, doing errands, going for walks, and "light chores" generally. [R. 23; 195–96;

2

203–205]. The ALJ found these activities, as well as the evidence in the record as a whole, to be inconsistent with some of the greater limitations alleged by Ms. T.

Ultimately, the ALJ concluded that, with her RFC, Ms. T. could perform her past relevant work, and therefore found that Ms. T. was not disabled. Ms. T. appealed.

## II.   STANDARD OF REVIEW

As an initial matter, Ms. T. argues that a court's review of an ALJ decision is "not a deferential one and there is no presumption in favor of the Administrative Law Judge's decision." [Pl.'s Mem. 14, ECF No. 21]. This assertion is without support. It is well established that the court's role is to determine whether the ALJ's decision is supported by "substantial evidence," and that "the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153–54 (2019). Indeed, the Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Hurd v. Aastrue*, 621 F.3d 734, 738 (8th Cir. 2010). This theme is found throughout the case law.

While it is true, as Ms. T. points out, that the Court must search the record for evidence that both supports and contradicts the ALJ's conclusions, this does not mean the Court may substitute its judgment for that of the ALJ's and determine how the Court would have held in the first instance. *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987) ("In the review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

3

(quotation omitted)). Rather, it means that the Court must determine, weighing the record as a whole, whether the ALJ's decision is supported by substantial evidence. *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996) (stating that the court's "review is limited to determining whether there is substantial evidence based on the entire record to support the ALJ's factual findings, and whether [her] decision was based on legal error"). If it is, the Court must affirm, even if there is contrary evidence in the record. *See Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) ("We will not reverse a decision simply because some evidence may support the opposite conclusion").

## III.  ANALYSIS

Ms. T.'s central assertion is that the ALJ's decision to omit any cervical-spine range-of-motion limitation (ROM limitation) was not supported by substantial evidence in the record. Because the vocational expert testified that her past work requires near constant positioning or flection of the neck, Ms. T.'s argument continues, the ROM limitation that should have been in the RFC would prevent her from doing her past relevant work. Accordingly, she asserts that she would be entitled to benefits absent the erroneous omission of the ROM limitation in her RFC. The vocational expert's testimony is largely uncontested, and the Court agrees that that testimony establishes that a person with a cervical-spine ROM limitation would be unable to perform Ms. T.'s past relevant work. Therefore, the primary issue is whether the RFC's lack of a ROM limitation is supported by substantial evidence in the record. Ms. T. submits several

4

arguments in support of her negative answer to that question. In addition, Ms. T. posits an unrelated argument for remand. The Court will summarize its rationale for rejecting each in turn.

**Consistency with Finding of Severe Impairment**

First, Ms. T. argues that the lack of a ROM limitation in the RFC is inconsistent with the ALJ's finding that Ms. T.'s "cervical spine dysfunction is a serve [sic] impairment." Ms. T. later characterizes this finding as one of severe "cervical disfunction." [Pl.'s. Mem. 16, ECF No. 21]. The Court need not consider whether such a finding is inconsistent with the RFC, because the ALJ made no such finding. The ALJ found that Ms. T. "had the following severe impairments: chronic myofascial cervical pain with mild cervical degenerative disc disease." [R. 17]. This is notably different from, as Ms. T.'s characterization suggests, a fundamental dysfunction of the cervical spine generally. The Court concludes that the ALJ's finding—that Ms. T.'s cervical pain and mild disc disease constitute "severe impairments" under the applicable regulations—does not automatically require the ROM limitation Ms. T. argues for.

**Agency Doctors' Opinions**

Second, Ms. T. argues that the ALJ, despite giving "some weight" to the Agency doctors' medical opinions, failed to account for their recommendations that Ms. T.'s RFC contain a cervical-spine ROM limitation. Here too, the Court disagrees with Ms. T.'s characterization of events. Ms. T.'s assertion that both Dr. Small and Dr.

5

Ossmann opined that her RFC should include a limitation on the ROM of the cervical spine is based exclusively on the phrase, "chronic neck pain with decreased ROM," contained in their reports. [R. 73, 85]. However, the context makes clear that neither Dr. Small nor Dr. Ossmann intended to recommend an RFC limitation with this phrase.

The phrase on which Ms. T. relies is provided in sections of the reports labeled "RFC – Additional Explanation." In each report, this section is preceded by one labeled, "Rate the individual's exertional limitations," and another, "Rate the individual's postural limitations." There are two other entries in each of the "Additional Explanation" sections—"mild degen changes to c-spine on xray" and "no gait abnormalities noted"—and all three entries are prefaced with the words "see fofae" (findings of fact and analysis of evidence). [R. 73, 85]. This context suggests that the phrase "chronic neck pain with decreased ROM" is one item in a list of evidence that the Agency doctors used to support their prior RFC recommendations.

Further, the Court notes that the Agency doctors are trained professionals and are aware of the terminology and specificity required in these reports. Indeed, in the sections calling for Drs. Small and Ossmann to rate Ms. T.'s exertional and postural limitations, they use the proper terminology and specificity for RFC limitations. [R. 72–73, 84–85 (e.g., 10-pound limitations on frequent lifting and/or carrying; standing and sitting limitations of "about 6 hours in an 8-hour work day;" and "occasional" climbing, stooping, and kneeling)]. Therefore, the assertion that the Agency doctors used the

6

unconventional and imprecise phrase "decreased ROM" to suggest an additional limitation, in a different section of their reports, is unreasonable.

**Vocational Expert Testimony**

In what she identifies at her third reason for remand, Ms. T. argues that the ALJ's decision fails to account for or mention the portion of the vocational expert's testimony in which he states that even a minimal ROM limitation of the neck would prevent someone from being able to perform Ms. T.'s past relevant work. [*See* R. 60–62]. While the Court agrees that the vocational expert testified to this effect, because the Court holds that the absence of any ROM limitation in the RFC was supported by substantial evidence, the ALJ's consideration of this testimony is immaterial.

**ROM Limitation and Overwhelming Evidence**

In her last identified argument on the RFC issue, Ms. T. asserts that "the evidence for dysfunction of the cervical spine is overwhelming." This, however, is essentially a reassertion of the conclusion Ms. T.'s other arguments have sought to establish. She asserts, without elaboration, that "[a]ll imaging [sic] . . . examinations . . . chiropractic treatment, medical branch blocks, and extensive amounts of medications indicate dysfunction of the cervical spine;" and that "[a]ll doctors including treating source [sic] and DDS doctors agree a limitation of the cervical spine is appropriate." [Pl.'s Mem. 19, ECF No. 21]. However, whether the evidence in the record, including the medical evidence, indicated dysfunction of the cervical spine was precisely the question the ALJ

7

was tasked with answering. Additionally, as already stated with respect to the Agency doctors, it is simply not true that "all doctors agree" that a ROM limitation is appropriate in this case.

The ALJ must determine the RFC based, not on any single piece of evidence, but on the record as a whole. *Clark v. Chater*, 75 F.3d 414, 416 (8th Cir. 1996). The ALJ acknowledged that the evidence in the record could reasonably be expected to support the symptoms Ms. T. asserted, but found that the record as a whole did not support the alleged limiting effects those symptoms had. The ALJ identified a number of medical records that noted a variety of symptoms and limitations related to Ms. T.'s cervical spine. [R. 17, 20 (citing R. 326, 338, 480–84, 570, 572–74, 575–76]. The ALJ found that those records were inconsistent—often noting otherwise normal and healthy behavior, appearance, and function. Indeed, the ALJ noted that the record as a whole contained significant inconsistencies, and therefore did not support greater limitations in Ms. T.'s RFC. [R. 20]. That the record contains significant inconsistencies is well supported. [*Compare, e.g.*, R. 575–76, *and* 481].

Further, the RFC itself suggests that the ALJ carefully considered what Ms. T. could and could not do in light of the record as a whole. For example, the ALJ included a restriction of only occasional bilateral overhead reaching, but frequent reaching in all other directions. [R. 19]. The ALJ found that these restrictions, but no more, were appropriate, despite Ms. T.'s claim of greater restrictions, in part because her treatment

was generally conservative in nature with significant gaps, and because her reported daily activities are inconsistent with the restrictions she alleges. [R. 23]. In short, the Court concludes that the RFC, as stated by the ALJ, is supported by substantial evidence in the record as a whole. While there is some evidence in the record that might support additional limitations, there is also evidence that does not, and the standard of review does not permit the Court to substitute its judgment for that of the ALJ.

**Ms. T.'s Testifying**

Ms. T. makes a final argument in support of remand that is unrelated to the RFC. She asserts that, at the conclusion of the vocational expert's testimony, which she believed was favorable to her claim, the ALJ stated "I think that will do it," that she interpreted this to mean that the vocational expert's testimony was sufficient for the ALJ to find in her favor, and that she therefore withheld her testimony. She argues that this amounted to an unfair constructive denial of her right to testify which requires remand so that she may be permitted to testify. The Court initially notes that it seems Ms. T. did testify, albeit briefly, regarding her past employment and medical bills. [R. 49–51; 53–55]. This demonstrates that Ms. T. and her counsel were aware of her ability and entitlement to testify that day. Additionally, at the end of the transcript, the ALJ asked, "Is there anything else you'd like me to know?" Ms. T. answered "no," and when asked the same question, her attorney answered, "nothing further." [R. 62–63]. This would have been the time for either Ms. T. or her counsel to speak up if Ms. T. wished

to provide further testimony. Finally, the Court notes that the record does not in the slightest suggest that the ALJ precluded Ms. T. from testifying.

Having thoroughly reviewed the record, the Court concludes that the ALJ's decision is supported by substantial evidence in the record as a whole, and that there is no other reason to remand this matter. Accordingly, **IT IS HEREBY ORDERED that**:

1. Ms. T.'s Motion for Summary Judgment [ECF No. 20] is **DENIED**; and

2. Commissioner Andrew Saul's Motion for Summary Judgment [ECF No. 22] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: June 8, 2021

s/ *Katherine Menendez*
Katherine Menendez
United States Magistrate Judge